Chapter 11 Disclosure Statement

## UNITED STATES BANKRUPTCY COURT
### for the Eastern District of Pennsylvania

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Case No.  13 - 18271 |
| Keith M. Scriven | : | (Chapter 11) |
| Debtor. | : | |
| | : | Hon. Ashely M. Chan |
| | : | |
| | : | |
| | : | |

## Fifth Modified Disclosure Statement by
## Keith M. Scriven

## NOTICE TO CREDITORS AND PARTIES IN INTEREST:

**THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO ALL CREDITORS AND PARTIES IN INTEREST.  THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT DEBTOR'S CHAPTER 11 PLAN IN THE ABOVE-CAPTIONED CASE DATED AS OF THE DATE HEREOF, AS IT MAY BE MODIFIED OR AMENDED FROM TIME TO TIME.  ALL CREDITORS AND PARTIES IN INTEREST ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY AND TO REVIEW THE PLAN IN ITS ENTIRETY.**

**DEBTOR RECOMMENDS THAT YOU VOTE IN FAVOR OF THE PLAN.**

Ronald G. McNeil, Esquire
McNeil Legal Services
1333 Race Street
Philadelphia, PA  19107-1585
(215) 564 - 3999 (t)
(215) 564 - 3537 (fx)
  r.mcneil1@verizon.net
Attorney for Debtor

Dated: July 29, 2015

Table of Contents

I.      Introduction                                                    1

II.     Background                                                      3

III.    Summary of the Plan of Reorganization
        and Treatment of Claims and Equity
        Interests                                                       5

IV.     Confirmation Requirements and Procedures                       16

V.      Effect of Confirmation of Plan                                 23

VI.     Other Plan Provisions                                          24

        Exhibits                                                       25

**THIS IS A SOLICITATION BY DEBTOR IN THIS CHAPTER 11
CASE,  AND IS NOT A SOLICITATION BY ITS ATTORNEYS,
FINANCIAL ADVISORS AND OTHER PROFESSIONAL
ADVISORS.  INFORMATION CONTAINED HEREIN HAS NOT
BEEN SUBJECT TO A CERTIFIED AUDIT.**

## I. Introduction

This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Keith M. Scriven (the "Debtor").  This Disclosure Statement contains information about Debtor and describes the Plan of Reorganization (the "Plan") dated July 29, 2015.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit "A."  ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

Debtor is proposing to repay all of his allowed claims.  The proposed distributions under this Plan are discussed at pages 5 - 16 of this Disclosure Statement.  General unsecured creditors are classified, and will receive a distribution of one hundred percent (100%)  of their timely filed, allowed claims, unless agreed otherwise.

A.      **Purpose of this Document**
         This Disclosure Statement describes:
         •       Debtor and significant events during the bankruptcy case,
         •       How the Plan proposes to treat claims or equity interests of the type you
                 hold (*i.e.*, what you will receive on your claim or equity interest if the plan
                 is confirmed),
         •       Who can vote on or object to the Plan,
         •       What factors the Bankruptcy Court (the "Court") will consider when
                 deciding whether to confirm the Plan,
         •       Why Debtor believes the Plan is feasible, and how the treatment of your
                 claim or equity interest under the Plan compares to what you would
                 receive on your claim or equity interest in liquidation, and
         •       The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**Unless otherwise defined herein, all terms contained in this Disclosure Statement shall have the same meanings ascribed to them in Debtor's Plan.  All terms used in this Disclosure Statement and defined in the Bankruptcy Code but not defined herein or in the Plan shall have the respective meanings ascribed to them in the**

**Bankruptcy Code.  All terms used in this Disclosure Statement and not defined
herein, in the Plan, or in the Bankruptcy Code, but are defined in the Federal Rules
of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the respective
meanings ascribed to them in the Bankruptcy Rules.  Holders of Claims receiving
this Disclosure Statement should carefully review the Plan in conjunction with their
review of this Disclosure Statement.**

**The purpose of this Disclosure Statement is to provide Creditors with information
determined by the Court to be adequate to enable them to make an informed
decision to vote to accept or reject the Plan.**

B.      **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**
The Court has not yet confirmed the Plan described in this Disclosure Statement.
This section describes the procedures pursuant to which the Plan will or will not
be confirmed.

1.      *Time and Place of the Hearing to Approve This Disclosure Statement and
Confirm the Plan*
The hearing at which the Court will determine whether to finally approve
this Disclosure Statement was held on July 15, 2015 at 11:00 am, in
Courtroom 5, at the   Robert N.C. Nix Building, 900 Market Street, 2nd
Floor,  Philadelphia, PA 19107-4299.  The Court will set a date for
confirmation of the Plan.

2.      *Deadline For Voting to Accept or Reject the Plan*
If you are entitled to vote to accept or reject the plan, vote on the enclosed
ballot and return the ballot in the enclosed envelope to McNeil Legal
Services, ATTN: Ronald G. McNeil, Esquire, 1333 Race Street
Philadelphia, PA  19107-1585.  See section IV.B. below for a discussion
of voting eligibility requirements.  Your ballot must be received by the
date set by this Court or it will not be counted.

3.      *Deadline For Objecting to the Adequacy of Disclosure and Confirmation
of the Plan*
Objections to this Disclosure Statement or to the confirmation of the Plan
must be filed with the Court and served upon Ronald G. McNeil, Esquire
by the date set by this Court.

4.      *Identity of Person to Contact for More Information*
If you want additional information about the Plan, you should contact:
Ronald G. McNeil, Esquire
1333 Race Street
Philadelphia, PA  19107-1585
(215) 564 - 3999.

C.    **Disclaimer**
*The Court has not approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.  The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan.  Objections to the adequacy of this Disclosure Statement will be set by this Court.*

## II.  Background

A.    **Description and History of the Debtor's Business**
Debtor is an individual.  For more than nine years, Debtor has been in the business of managing real estate.  Debtor is now downsizing his real estate holdings and will expand his jewelry/art business and his farming business.

B.    **Insiders of the Debtor**
Keith M. Scriven is the sole interest holder, and he has not received any compensation during the two years prior to the commencement of Debtor's bankruptcy case.  In addition, he has not received any compensation during the pendency of this Chapter 11 case.

C.    **Management of the Debtor Before and During the Bankruptcy**
During the two years prior to the date on which the bankruptcy petition was filed, Keith M. Scriven has been the sole interest holder and has operated exclusive control of Debtor's business operations (collectively the "Manager").  He has been the Manager during this Debtor's Chapter 11 case.  It is expected that he will remain the Manager after the effective date of the order confirming the Plan.

D.    **Events Leading to Chapter 11 Filing**
Many of Debtor's tenants became delinquent with their rent.  In addition and because of the significant decline in the value of his properties, Debtor was unable to sell any real estate, to modify his mortgages, or to obtain any assistance from his mortgage companies.

E.       **Significant Events During the Bankruptcy Case**
- Debtor has employed Ronald G. McNeil, Esquire as his counsel.
- Debtor has employed Howard Markovitz, CPA
  of J Bernard Kay & Co., P.C.  as his accountant.
- Debtor has renegotiated some of his mortgages.
- Debtor has begun the process of obtaining new tenants.
- Debtor has restarted his jewelry/art business.
- Debtor has sold one of his properties.
- Debtor is generating revenue from the farm.
- Debtor has renegotiated some of his unsecured debts.

F.       **Projected Recovery of Avoidable Transfers**
Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

G.       **Claim Objections**
Except to the extent that a claim is already allowed pursuant to a final non-appealable order, Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article IV of the Plan.

H.       **Current and Historical Financial Conditions**
The identity and fair market value of the estate's assets are listed in Exhibit "B." Debtor has based these values on his personal and professional awareness of the interior and exterior of these properties and of comparable properties.

Debtor has not issued a recent financial statement before the filing of this bankruptcy.

The most recent post-petition operating report filed since the commencement of Debtor's bankruptcy case are set forth in Exhibit "D."

### III.  Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests

A.    **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.    **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has *not* placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering Debtor's Chapter 11 case which are allowed under Section 507(a)(2) of the Code.

The following chart lists Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment | Type of Claim |
|---|---|---|---|
| Howard Markovitz, CPA | $5,000.00 | Paid after Court approval | Accounting Fees |
| Ronald G. McNeil, Esquire | $12,500.00 | Paid after Court approval | Legal Fees/Costs |
| Office of the U.S. Trustee Fees | paid on quarterly basis | Paid in full on Effective Date | U.S. Trustee Fees |
| Total | $17,500.00 | | |

C.    **Priority Tax Claims**

1.    Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

2.      Certain priority claims that are referred to in Sections 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment. Debtor has no claims under Sections 507(a)(1), (4), (5), (6), and (7) of the Code.

3.      The following chart lists Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name & type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| PA Rev (a) | $14,000.00 | 2/09/2012 | after Effective Date |

(a)      Debtor has amended his 2012 tax return, which should reduced his secured claim liability.  Some of the PA Rev. amount includes corporate liability.

4.      These Class 1 claims are impaired and Debtor intends to satisfy these claims within thirty-six (36) months after the Effective Date.

5.      Plus interest accrued at the applicable statutory rate of 3.0%, unless modified by agreement.

D.      **Secured Claims**
The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:
1.      *Classes of Secured Claims*
Allowed Secured Claims are claims secured by property of Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or

Chapter 11 Disclosure Statement                                                    7

set offs securing the creditor's claim is less than the amount of the
creditor's allowed claim, the deficiency will be classified as a general,
unsecured claim.

The following chart lists all classes containing Debtor's secured pre-petition
claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---------|-------------|----------------------|------------|-----------|
| 2 | BAC | N | impaired | (A) |
| 3 | Citi | N | impaired | (B) |
| 4 | Deutsche | N | impaired | (C) |
| 6 | Fulton Bank | N | impaired | (D) |
| 7 | J. Otis Smith | N | impaired | (E) |
| 9 | Ocwen | N | impaired | (F) |
| 10 | PA Rev. | N | impaired | (G) |
| 11 | Philadelphia | N | impaired | (H) |
| 12 | Seterus | N | impaired | (I) |

| 13 | TD Bank | N | impaired | (J) |
|----|---------|---|----------|-----|
| 14 | U.S. Bank | N | impaired | (K) |
| 15 | Wells Fargo | N | impaired | (L) |

The Class 5 claim of Edgewater and the Class 8 claim of New York
Community Bank have been satisfied.


2.      Distributions

(A)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E), to 1123(a)(5)(G), and to 1123(a)(5)(H),
Debtor shall satisfy the present value of the Class 2 claim of BAC ($66,713.46 on
P.O.C. # 18) less adequate protection payments, plus a modified fixed interest rate
of 4.25%, and shall pay by monthly installments that come due the Effective Date
through the Maturity Date of the underlying November 11, 2005 mortgage note.

(B)     Debtor and Stacy J. Brookstein ("Brookstein") co-own 324 Queen Street, Unit B,
Philadelphia, PA 19147 and are co-debtors for the mortgages of the Class 3 claim
of Citi and of the Class 12 claim of Seterus for such property.

Pursuant to 11 U.S.C. § 1123(a)(5)(B), to Article III, E.4., and after the Effective
Date, Debtor will transfer his ownership rights and liabilities to Brookstein and
satisfy her unsecured, nonpriority claim against Debtor.  Brookstein shall make
direct payments to Citi for its Class 3 claim.  Should  Brookstien fail to make such
payments or if Citi is granted Relief from the Automatic Stay, Debtor will
surrender his interest pursuant Sections 1123(a)(5)(B) and 1123(a)(5)(E) of the
Code, or Debtor will attempt to sell this associated property to satisfy this claim
pursuant to Sections 1123(a)(5)(D) and 1123(a)(5)(E) of the Code.

(C)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E), to 1123(a)(5)(G), and to 1123(a)(5)(H),
        Debtor shall satisfy the present value of the Class 4 claim of Deutsche (no proof
        of claim has been file; however, Debtor believes that such amount is
        $831,810.25), less adequate protection payments, plus an adjustable interest rate
        of 4.509%, and adjusted by agreed upon escrow payments for homeowners'
        insurance and real estate taxes, and shall pay by monthly installments that come
        due the Effective Date through the Maturity Date of the underlying February 8,
        2006 mortgage and note.

(D)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E) and 1123(a)(5)(G), Debtor shall satisfy
        the present value of the Class 6 claim of Fulton Bank, in the aggregate amount of
        $148,877.87  (P.O.C. # 14 amount plus additional post petition charges), less
        adequate protection payments, plus a modified fixed interest rate of 7.25%, and
        shall pay by monthly installments that come due the Petition Date through the
        amended Maturity Date of the underlying November 16, 2009 mortgage and note.
        Debtor  will attempt to sell this property on or before this amended maturity date.
        Debtor will continue to pay for homeowners' insurance and real estate taxes.

(E)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E) and 1123(a)(5)(G), Debtor shall satisfy
        the present value of the Class 7 claim of Smith, in the aggregate amount of
        $100,000.00, upon the sale of 1009 North 6th Street, unless modified by further
        agreement.

(F)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E), to 1123(a)(5)(G), and to 1123(a)(5)(H),
        Debtor shall satisfy the present value of the Class 9 claim of Ocwen ($907,654.44
        on P.O.C. # 19), less adequate protection payments, plus an adjustable interest
        rate of 3.133% (unless modified by agreement), and adjusted by agreed upon
        escrow payments for homeowners' insurance and real estate taxes, and shall pay
        by monthly installments that come due the Effective Date through the Maturity
        Date of the underlying September 1, 2005 mortgage and note.

(G)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E) and 1123(a)(5)(G), Debtor shall satisfy
        this Class 10 claim of PA Rev. (P.O.C. # 7), shall be reduced to the value of the
        collateral, and shall be paid quarterly over forty-eight months in accordance with
        the provisions of 11 U.S.C. § 1129(a)(9)(C) plus interest accrued at the applicable
        statutory rate of 3.0%, unless modified by agreement.

(H)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E) and 1123(a)(5)(G), Debtor shall satisfy
this Class 11 claim of Philadelphia (P.O.C. # 8), shall be reduced to the value of
the collateral, and shall be paid quarterly over forty-eight months in accordance
with the provisions of 11 U.S.C. § 1129(a)(9)(C) plus interest accrued at the
applicable statutory rate of 9.0%, unless modified by agreement.

(I)      Pursuant to 11 U.S.C. § 1123(a)(5)(B), to Article III, E.4., and after the Effective
Date, Debtor will transfer his ownership rights and liabilities to Brookstein and
satisfy her unsecured, nonpriority claim against Debtor. Brookstein shall make
direct payments to Seterus for its Class 12 claim.  Should  Brookstien fail to make
such payments or if Seterus is granted Relief from the Automatic Stay, Debtor
will surrender his interest pursuant 11 U.S.C. §§ 1123(a)(5)(B) and 1123(a)(5)(E),
or Debtor will attempt to sell this associated property to satisfy this claim
pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1123(a)(5)(E).

(J)      Debtor shall satisfy the Class 13 claim of TD Bank.  Debtor has sold One Shore
Road, Edgewater, NJ 07020 on July 30, 2014 and has, pursuant to 11 U.S.C. §
1123(a)(5)(D), satisfied in full settlement, satisfaction, release, and discharge of
all its TD Bank's respective claims associated with this property.  As per
Stipulation, Debtor will satisfy TD Bank's total, junior liens of $175,000.00
(which modified Proof of Claim #16 amount) on the Pines Island Pines, NY
properties upon the sale of one or both properties within the next twelve (12) to
twenty-four (24) months.

(K)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E) and 1123(a)(5)(G), Debtor shall satisfy
the Class 14 claim of U.S. Bank, in the aggregate amount of $554,062.27 (P.O.C.
#10 amount plus additional post petition charges), less adequate protection
payments, plus an adjustable interest rate of 2.875%, and adjusted by agreed upon
escrow payments for homeowners' insurance and real estate taxes, shall be paid
by monthly  installments that come due the Petition Date through the amended
Maturity Date of the underlying November 11, 2005 mortgage and note.

(L)      Pursuant to 11 U.S.C. §§ 1123(a)(5)(E), to 1123(a)(5)(G), and to 1123(a)(5)(H),
         Debtor shall satisfy the present value of the Class 15 claim of Wells Fargo
         ($347,186.87 on P.O.C. # 12), less adequate protection payments, plus a modified
         fixed interest rate of 4.25%, and adjusted by agreed upon escrow payments for
         homeowners' insurance and real estate taxes, and shall pay by monthly
         installments that come due the Effective Date through the Maturity Date of the
         underlying April 26, 2002 mortgage and note. Within the next twenty-four (24)
         months, Debtor will attempt to sell this property.

2.       These secured creditors shall retain their liens against the Property of the
         Reorganized Debtor and the secured status of their claims against the
         Property of the Reorganized Debtor to same extent as exists on the
         Effective Date.  Upon payment in full of their Allowed Secured Claim as
         provided herein, the Lien of these secured creditors shall be extinguished
         and shall effect a full and final satisfaction of such claim such that neither
         Debtor nor the Reorganized Debtor shall have any liability on account of
         such claims.

E.       **Unsecured, Nonpriority Claims**
1.       General  unsecured, nonpriority claims are not secured by property of the
         estate and are not entitled to priority under 11 U.S.C. § 507(a).

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 16 | Unsecured, nonpriority claims | impaired | full payment of allowed claims |

2.       Claim amount as on Debtor's Schedule F or on P.O.C.:

|  |  |
|---|---|
| The claim of Bank of America (P.O.C. # 3) | $31,775.57 |
| The claim of Capital One | 7,840.00 |
| The claim of Jersey Central Power, a/k/a, First Energy Electric Company  (P.O.C. # 13) | 2,405.89 |
| The claim of J. Otis Smith | 10,000.00 (a) |
| The claim of Laddy, Clark (P.O.C. # 9) | 1,801.92 |
| The claim of Lawrence M. Kane | 0.00 (a) |

The claim of Obermayer Rebmann Maxwell
  & Hippel, LLP (P.O.C. # 6)                          20,237.57
The claim of PA Rev. (P.O.C. # 7)                           3,326.43
The claim of PECo (P.O.C. # 4)                                395.01
The claim of P.G.W. (P.O.C. # 5)                           1,597.24
PSE & G                                                     4,500.00
The claim of Ronette Streeter                               0.00 (a)
The claim of Brookstein (P.O.C. # 17)                       0.00 (a)
The claim of Suffolk County Water
  Authority (P.O.C. # 2)                              490.65
The claim of United Water - New Jersey                     1,500.00
The claim of Verizon                                       1,000.00
The claim of William Whalon                            50,000.00 (a)

(a) - Stipulations changed prior amount [docket # 119-123 and 134].

3.    Pursuant to  11 U.S.C. § 1129(a)(15)(B), the treatment and consideration
to be received by holders of Allowed unsecured, nonpriority claims shall
be in full settlement, satisfaction, release and discharge of their respective
Claim.  Holders of such claims shall be paid from Debtor's cash flow over
and within sixty (60) months after the Effective Date, one hundred percent
(100%) of their timely filed and allowed claims under 11 U.S.C. § 502,
which has not been deemed disputed, pursuant to the terms set forth in
Article IV of this Plan, unless otherwise agreed between Debtor and such
creditor.

4.    Except that after the Effective Date and pursuant to 11 U.S.C. §
1123(a)(5)(B) and to section III.D.2.(B) and (I) above, Debtor will transfer
his ownership rights and mortgage liabilities to Brookstein and satisfy her
unsecured, nonpriority claim.

5.    The treatment and consideration to be received by holders of Allowed
unsecured, nonpriority Claims shall be in full settlement, satisfaction,
release and discharge of their respective Allowed Claims.  Holders of
Allowed Class 3 unsecured, nonpriority Claims shall be paid one hundred
percent (100%), unless agreed otherwise.  This section of the Plan shall
effect a full and final satisfaction of such claim such that neither Debtor

nor the Reorganized Debtor shall have any liability on account of such Claim, after such payment.

F.      **Classes of Equity Interest Holders**

1.      An interest in the debtor or the right to acquire the same, including, without limitation, as a holder of a right to acquire any interest.  Interest holders are the parties who hold ownership interest (i.e., equity interest) in the debtor. If the debtor is a corporation, entities holding preferred or common stock in the debtor are interest holders.  If the debtor is a partnership, the interest holders include both general and limited partners.  In this case, the debtor is an individual, and the debtor is the interest holder.  There are no equity interest holders.

2.      The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 17 | Interest holder | impaired | Keith M. Scriven is the sole interest holder and is not receiving any distributions. |

3.      Under the Absolute Priority Rule, Debtor shall not retain any interest in any pre-petition non-exempt property, if such retention does not meet the new value exception or that the requirements of 11 U.S.C. § 1129(a)(15)(B) are triggered.

Chapter 11 Disclosure Statement                                                    14

G.    **Means of Implementing the Plan**
   1.    *Source of Payments*    (*See*, Exhibit G)
Payments and distributions under the Plan will be funded by the following:

| Name | Status | Insider | Type | amount |
|------|--------|---------|------|--------|
| various | Tenants | N | Rental Income | (a) |
| consultant contract | business | N | Business income | (b) |
| distribution from partnership | business | N | Business Income | (c) |
| jewelry/art sales/farm | business | N | Business Income | (d) |
| sale or property | business | N | Business Income | (e) |

(a)    Debtor has begun to rent and is seeking additional tenants.  He has current tenants and these rentals include the Fire Island Pines seasonal rentals.

(b)    Debtor has signed a consulting contract, which potentially pays $1,000.00 monthly.

(c)    H.M.S. sold  113-15 Arch Street Philadelphia, PA 19106, from which Debtor's partner proceeds, if any, shall be utilized to fund part of this Plan.

(d)    Debtor has restarted his jewelry/art sales business.  The farm has the potential to produce additional income

(e)    Debtor has sold One Shore Road and will attempt to sell both real and personal property to fund this Plan.

(f)    Debtor has received a gift of $48,000.00 from his parents and may receive additional funds.  In addition, Debtor intends to sell some of his properties within the next twenty-four (24) months and will use these funds to fund this Plan.

Chapter 11 Disclosure Statement                                                                15

       2.      Post-confirmation Management

The Post-Confirmation Managers of Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|------|-------------|----------------------|----------|--------------|
| Keith M. Scriven | Interest Holder | Y | Manager | 0.00 p/mth |

H.      **Risk Factors**
The proposed Plan has the following risks:
The success of this proposed Plan is dependent upon Debtor ability to sustain his jewelry/art business and his farm, to retain good tenants, to increase consulting work, and to sell some of his property.

I.      **Executory Contracts and Unexpired Leases**
The Plan, in Article VII, lists all executory contracts and unexpired leases that Debtor will assume under the Plan.  Assumption means that Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.  Article VII also lists how Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article III will be rejected under the Plan.  Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

***The Deadline for Filing a Proof of Claim Based on a Claim Arising from
the Rejection of a Lease or Contract was April 30, 2014.***  Any claim based on the
rejection of a contract or lease will be barred if the proof of claim has not timely
filed, unless the Court orders otherwise.


NO BAR DATE HAS BEEN SET FOR EQUITY HOLDERS TO FILE PROOFS
OF INTEREST AND, UNDER THIS PLAN, NO SUCH FILING IS NECESSARY.


J.      **Tax Consequences of Plan**
        **Creditors and Equity Interest Holders Concerned with how the Plan
        may Affect Their tax Liability Should Consult with Their own
        Accountants, Attorneys, and/or Advisors.**

        The following are the anticipated tax consequences of the Plan:
        1.      Tax consequences to Debtor
                Pursuant to Internal Revenue Code § 108(a)(1)(A), discharged debts
                are excluded from Debtor's gross income.

        2.      General tax consequences on creditors
                A Creditor that receives cash in satisfaction of its Allowed Claim will
                generally receive a gain or loss with respect to the principal amount
                of the Allowed Claim equal to the difference between: (i) the
                Creditor's basis in the Claim (other than any Claim in respect to
                accrued interest); and (ii) the balance of the cash received after any
                allocation to the accrued interest.


**CREDITORS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS WITH
RESPECT TO THE TREATMENT OF DISTRIBUTIONS MADE UNDER THE
PLAN**.


## IV.  Confirmation Requirements and Procedures

To be confirmable, the Plan must meet the requirements listed in Section 1129(a) or (b)
of the Code.  These include the requirements that: the Plan must be proposed in good
faith; at least one impaired class of claims must accept the Plan, without counting votes
of insiders; the Plan must distribute to each creditor and equity interest holder at least as
much as the creditor or equity interest holder would receive in a Chapter 7 liquidation

case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requirements are <u>not</u> the only requirements listed in 11 U.S.C. § 1129, and they are not the only requirements for confirmation.

A.     **Requirements for Confirmation of the Plan**
        The requirements for confirmation of the Plan are set forth in detail in 11 U.S.C. § 1129.  The following summarizes some of the pertinent requirements:

1.     **Acceptance by Impaired Classes.**  Except to the extent that the cramdown provisions of 11 U.S.C. § 1129(b) may be invoked, each Class of Claims must either vote to accept the Plan or be deemed to accept the Plan, because the Claims of such Class are not impaired.

2.     **Feasibility.**  The Bankruptcy Court is required to find that the Plan is likely to be implemented and that parties required to perform or pay money under the Plan will be able to do so.

3.     **"Best Interest" Test.**  The Bankruptcy Court must find that the Plan is in the "best interest" of all Creditors.  To satisfy this requirement, the Bankruptcy Court must determine that each holder of a Claim against Debtor: (i) has accepted the Plan; or (ii) will receive or retain under the Plan money or other property which, as of the Effective Date, has a value not less than the amount such holder would receive if Debtor's Estate was liquidated under Chapter 7 of the Code on such date.

4.     **"Cramdown" Provisions.**  Under the circumstances which are set forth in detail in 11 U.S.C. § 1129(b), the Bankruptcy Court may confirm the Plan even though a Class of Claims has not accepted the Plan so long as: (i) one Impaired Class of Claims has accepted the Plan, excluding the votes of insiders; and (ii) the Plan is fair and equitable and does not discriminate unfairly against such non-accepting Classes.

5.     **Procedure.**  To confirm the Plan, the Bankruptcy Court must hold a hearing to determine whether the Plan meets the requirements of 11 U.S.C. § 1129 (the "Confirmation Hearing").  The Bankruptcy Court has not set a date as of yet for this Confirmation Hearing.

6.     **Objection to Confirmation.**  Any party-in-interest may object to the confirmation of the Plan and appear at the Confirmation Hearing to pursue such objection. The Court has not set a date as of yet as the deadline for filing and serving upon Debtor's Counsel objections to confirmation of the Plan.  Objections to confirmation must be filed with the Bankruptcy Court.

7.      **Effect of Confirmation.**  Except as otherwise provided in the Plan or in the Confirmation Order, confirmation vests title to property of Debtor in the reorganized Debtor free and clear of all Claims and liens of Creditors, subject to the provisions of the Plan.  Confirmation serves to make the Plan binding upon Debtor, all Creditors and other parties-in-interest, regardless of whether they cast a ballot to accept or reject the Plan.

B.      **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan, if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, Debtor believes that Classes Two (2) through Seventeen (17) claims are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.  Debtor believes that Class 1 claims are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1.      What is an Allowed Claim or an Allowed Equity Interest?
Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) Debtor has scheduled the claim on Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Bankruptcy Rule 3018(a).

*The deadline for filing proof of claims was April 30, 2014 for all claims.*

2.     *What Is an Impaired Claim or Impaired Equity Interest?*
As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in 11 U.S.C. § 1124, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.     *Who is **Not** Entitled to Vote*
The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to Sections 507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

4.     *Who Can Vote in More Than One Class*
A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

C.     **Votes Necessary to Confirm the Plan**
If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cram down on non-accepting

classes, as discussed later in Section C.2.

1.      *Votes Necessary for a Class to Accept the Plan*
A class of claims accepts the Plan if both of the following occur: (1) the
holders of more than one-half (½ ) of the allowed claims in the class, who
vote, cast their votes to accept the Plan, and (2) the holders of at least two-
thirds (2/3) in dollar amount of the allowed claims in the class, who vote,
cast their votes to accept the Plan.  Both tests are based ONLY on those
who actually vote.

A class of equity interests accepts the Plan if the holders of at least two-
thirds (2/3) in amount of the allowed equity interests in the class, who
vote, cast their votes to accept the Plan.  This test is based ONLY on those
who actually vote.

2.      *Treatment of Nonaccepting Classes*
Even if one or more impaired classes reject the Plan, the Court may
nonetheless confirm the Plan, if the nonaccepting classes are treated in the
manner prescribed by 11 U.S.C. § 1129(b).  A plan that binds
nonaccepting classes is commonly referred to as a "cram down" plan.  The
Code allows the Plan to bind nonaccepting classes of claims or equity
interests if it meets all the requirements for consensual confirmation
except the voting requirements of 11 U.S.C. § 1129(a)(8), does not
"discriminate unfairly," and is "fair and equitable" toward each impaired
class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect
your claim or equity interest, as the variations on this general rule are
numerous and complex.***

D.      **Objections to Claims**
1.      Prior to confirmation, any party-in-interest shall have the right to object to
the allowance of any Claim. Subsequent to the Effective Date, the
exclusive right to object to the allowance of any Claim is hereby reserved
to Debtor.  Except as otherwise provided in the Plan, objections to Claims
shall be filed by Debtor with the Bankruptcy Court no later than one
hundred and sixty (60) days after the Effective Date, or such later date as

        the Bankruptcy Court may direct, and served upon the holder of such
Claim.

2.     Unless otherwise ordered by the Bankruptcy Court, objections to Claims
may be litigated to judgment, settled or withdrawn.

3.     **Disputed Claims**. Distributions shall not be made with respect to any
Disputed Claim until an Order, judgment, decree or settlement agreement
with respect to such Claim becomes a Final Order.  The Disbursing Agent
shall establish a Disputed Claims reserve upon the availability of funds by
reserving a percentage, as established by the Plan Proponent, in cash (the
"Reserve Percentage") of the Face Amount of all such Disputed Claims
with respect to General Unsecured Claims, and the full Face Amount of
such Claims as to which priority is claimed, unless otherwise ordered with
respect to any Claims by virtue of a motion to estimate.

The Disbursing Agent may modify the Reserve Percentage upon approval
by the Bankruptcy Court after ten days notice to: (a) all Persons on
Debtor's Bankruptcy Rule 2002 service list; and (b) the holders of Claims
in the Disputed Claims reserve.  The Disbursing Agent may eliminate the
reserve for any Claim upon its disallowance or other resolution.
Distribution with respect to Disputed Claims shall be made within thirty
(30) days after an Order, judgment, decree or settlement agreement with
respect to such Claims becomes a Final Order.

4.     **Failure to File Proof of Claim.**  Under the Code, any Holder of a Claim
which has not filed a proof of claim by the Bar Date is barred from
participating in the Plan or obtaining distribution thereunder, unless the
Claim was listed on the Schedules and Statements of Affairs of Debtor
(and not listed therein as disputed, contingent or unliquidated).

E.     **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest
holders who do not accept the Plan will receive at least as much under the Plan as
such claim and equity interest holders would receive in a Chapter 7 liquidation.
Debtor is proposing to pay all creditors as much under this Plan as such claims
would receive in a Chapter 7 liquidation.

A liquidation analysis is attached to this Disclosure Statement as Exhibit "E."

F.      **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtor or any successor to Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.      *Ability to Initially Fund Plan*
Debtor believes that it will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibit "F."

2.      *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

Debtor must also show that it will have enough cash over the life of this Plan to make the required Plan payments.

Debtor has provided projected financial information. Those projections are listed in Exhibit "G."

Within two years of the Effective Date, Debtor intends to sell three of his real properties and with the operation of his other businesses, he expects to generate annual revenue of $220,910.00 and will generate annual expenses of $157,128.96.  This calculation results in an annual net of $63,791.04.

Debtor expects to satisfy his Allowed unsecured, nonpriority claims within five (5) years after the Effective Date.

***You should consult with your accountant or other financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.  Effect of Confirmation of Plan

A.  **Discharge of Debtor**

Debtor shall not receive a discharge of debts until Debtor makes all Allowed unsecured claim payments due this Plan or this Court grants a hardship discharge, to the extent specified in 11 U.S.C.§ 1141 of the Code.

If Confirmation of this Plan does not occur, the Plan shall be deemed null and void.  In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims against Debtor or its estate or any other persons, or to prejudice in any manner the rights of Debtor or its estate or any person in any further proceeding involving Debtor or its estate.

The provisions of this Plan shall be binding upon Debtor, all Creditors, and all Interest Holders, regardless of whether such Claims or Interest Holders, are impaired or whether such parties accept this Plan, upon Confirmation thereof.

Pursuant to 11 U.S.C. § 1141(d)(5)(A) of the Code, Debtor may file a motion to close this bankruptcy case sometime after confirmation and move to reopen upon completion of all payments required under the Plan for the purpose of receiving his discharge.

B.  **Modification of Plan**

Debtor may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

"Upon request of Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan."

C.     **Final Decree**

Once Debtor satisfies his Allowed unsecured, nonpriority claims, as provided in
Rule 3022 of the Federal Rules of Bankruptcy Procedure, he, or such other party
as the Court shall designate in the Plan Confirmation Order, shall file a motion
with the Court to obtain a final decree to close the case. Alternatively, the Court
may enter such a final decree on its own motion.

## VI.  Other Plan Provisions

Retention of Jurisdiction by the Bankruptcy Court After Effective Date:
Pursuant to 11 U.S.C. §§ 105(a) and 1142, the Bankruptcy Court shall retain and shall
have exclusive jurisdiction over any matter: arising under the Bankruptcy Code or arising
in or related to the Chapter 11 Case or the Plan.

Respectfully submitted,

By: _____
    Keith M. Scriven, Debtor

By: _____
    Ronald C. McNeil, Esquire
    Attorney for Debtor
    DATE: July 29, 2015
    1333 Race Street
    Philadelphia, PA  19107-1585
    (215) 564 - 3999 (t)
    (215) 564 - 3537 (fx)
       r.mcneill@verizon.net

# Exhibits

**Exhibit A** - Proposed Plan of Reorganization dated July 29, 2015

**Exhibit B** - Identity and Value of Material Assets of Debtor

a)   1007 North 6th Street                (U.S. Bank & B.A.C.)
     Philadelphia, PA 19123
     Debtor's schedule A value is $608,000.00.

b)   1009 North 6th Street                (Smith)
     Philadelphia, PA 19123
     Debtor's schedule A value is $150,000.00.

c)   324 Queen Street, Unit B                (Seterus & Citibank)
     Philadelphia, PA 19147
     Debtor's schedule A value is $575,000.00 (jointly owned).

d)   341-A  Shell Walk                (Wells Fargo & TD Bank)
     Fire Island Pines, NY  11782
     Debtor's schedule A value is $650,000.00.

e)   937 County Road 619                (Ocwen)
     Newton, NY 07860
     Debtor's schedule A value is $950,000.00.  Ocwen has done an
         appraisal, which Debtor does not know its determination.

f)   25 Widgeon Walk                (Deutsche & TD Bank)
     Fire Island Pines, NY  11782
     Debtor's schedule A value is $700,000.00.

g)   One Shore Road                (TD Bank & Edgewater)
     Edgewater, NJ 07020
     Debtor's schedule A value is $1,200,000.00.  On July 30, 2014,
         Debtor sold this property for $1,250,000.00.

h)   1022 County Road 619                (Fulton)
     Newton, NJ 07860
     Debtor's schedule A value is $350,000.00.

> i)      has an interest in Hanlan Midgette Scriven, LLC; H.M.S., LP;
>          in Scriven, Inc. (inactive); and in Park-A-Lot, Inc. (inactive)
>
> j)      Cash                          $8,816.97 (as per last bank statement)
>
> p)      personal effects      $279,250.00 (as per Schedule B).

Debtor is basing his valuation of these real properties on his real estate experience and on his personal knowledge of the exterior and interior of these properties.

## Exhibit C - Pre-petition Financial Statements

> Debtor has not issued a recent financial statement before the filing of this bankruptcy.

## Exhibit D - Summary of the Filed Post-Petition Operating Report

Debtor has filed monthly operating reports for each month during the pendency of its Chapter 11 Case.  As of the date of this Disclosure Statement, the most recent report filed was for the month of May 2015.  The operating reports reflect, *inter alia*, the following:

| Month | Income | Expenses | Cash | Profit | |
|---|---|---|---|---|---|
| September 2013 | $ 4,825.46 | $ 6,699.66 | $ 4,825.46 | -$ 1,874.20 | |
| October 2013 | $ 8,435.88 | $ 5,705.73 | $ 8,435.88 | $ 2,730.15 | |
| November 2013 | $ 4,922.85 | $ 3,297.30 | $ 8,220.15 | $    625.55 | |
| December 2013 | $ 2,150.00 | $ 2,073.86 | $ 2,771.04 | $      76.14 | |
| January 2014 | $ 8,749.00 | $ 3,971.33 | $14,455.03 | $ 4,777.67 | |
| February 2014 | $ 2,575.00 | $ 2,248.41 | $ 1,792.37 | $    326.98 | |
| March 2014 | $ 8,749.00 | $ 3,971.33 | $14,455.03 | $ 4,777.67 | |
| April 2014 | $37,553.05 | $12,930.38 | $29,183.34 | $24,984.35 | ** |
| May 2014 | $24,216.57 | $ 6,169.30 | $19,922.47 | $18,047.27 | ** |
| June 2014 | $30,060.87 | $ 5,144.10 | $24,216.57 | $19,072.47 | ** |
| July 2014 | $ 1,205.00 | $11,518.03 | $10,940.96 | -$10,313.03 | |
| August 2014 | $ 8,200.00 | $ 7,484.92 | $ 6,462.31 | $    715.08 | |
| September 2014 | $ 6,309.09 | $ 9,104.76 | $ 4,434.79 | -$ 2,795.67 | |
| October 2014 | $14,250.00 | $ 9,104.76 | $ 3,958.95 | $ 4,337.67 | |
| November 2014 | $ 7,080.98 | $ 6,293.12 | $ 1,226.94 | $    787.86 | |
| December 2014 | $ 6,300.00 | $ 6,641.14 | $ 1,380.81 | -$    341.14 | |

| | | | |
|---|---|---|---|
| January 2015 | $ 2,900.00 | $ 1,705.55 | $ 792.00 | $ 1,194.45 |
| February 2015 | $ 2,300.00 | $ 4,693.98 | $ 4,693.98 | -$ 2,393.98 |
| March 2015 | $ 6,698.60 | $ 3,276.32 | $ 746.31 | $ 3,422.28 |
| April 2015 | $ 6,900.00 | $ 6,052.16 | $ 2,549.73 | $ 847.84 |
| May 2015 | $ 8,520.00 | $ 2,852.19 | $ 8,816.97 | $ 5,667.81 |

\*\*  -  based on cash infusion from Debtor's parents

Any Creditor desiring copies of Debtor's operating reports may obtain them at the Office of the Clerk of the United States Bankruptcy Court for the Eastern District of Pennsylvania, 900 Market Street, Suite 400, Philadelphia, PA 19107-4299 or from Debtor's counsel.

## Exhibit E  -  Liquidation Analysis

Plan Proponent's Estimated Liquidation Value of Assets

Assets
a.      Cash on hand                              $      8,816.97
b.      Building & Land                          $5,183,000.00 \*\*\*
c.      Personal effects                         $  279,250.00 \*\*
        Total Assets at Liquidation Value        $5,471,066.97

Less:
        Secured creditors' recoveries            $4,549,730.00 \*\*\*

Less:
        Chapter 11 Trustee fees and expenses     $      3,475.00

Less:
        Chapter 11 administrative expenses       $      1,213.00

Less:
        Priority claims, excluding
         administrative expense claims           $    31,040.85 (P.O.C. # 7)

Less:
        Debtor's claimed exemptions              $    42,450.00
        (1)    balance for unsecured claims
        (2)    total dollar amount of
               unsecured claims                  $  116,792.76 (based on filed POCs)
               Debtor has reserved the right to object to these POCs.

Chapter 11 Disclosure Statement                                                              28

Percentage of Claims which unsecured
  creditors would receive or retain in a
  Chapter 7 Liquidation:                                          100%

Percentage of Claims which unsecured creditors
  will receive or retain under the Plan:                          100%

    \*\*  -   This figure is based on Debtor's Schedule B, and there
          is no calculation of Debtor's business interest.

    \*\*\*  -   This figure is based on Debtor's Schedules A and D,
          Debtor has sold one of his properties.


### Exhibit F  - Cash on hand on the Effective Date of the Plan

Cash on hand on Effective Date of the Plan                       $ 8,816.97

Less -
       Amount of administrative expenses payable
        on Effective Date of the Plan
       Amount of statutory costs and charges
       Amount of cure payments for executory contracts
       Other Plan payments due on Effective Date of the Plan
           Balance after paying these amounts

The sources of the cash Debtor will have on hand by the
  Effective Date of the Plan are estimated as follows:
       Cash in Debtor's bank account now                        $ 8,816.97
       Additional cash Debtor will accumulate from
        net earnings between now and Effective Date
        of the Plan (projected income minus current expenses
        with anticipated Effective Date in 3 months)            $25,988.00
       Borrowing
       Capital Contributions (may get additional
        funds from parents)
       Other

       Total                                                    $34,804.97

**Exhibit G** -  Projections of Cash Flow
and Earnings for Post-Confirmation Period

| | | | current / | projected |
|---|---|---|---|---|
| a) | revenue per month | | | |
| | i) | jewelry/art | $3,848.60 | 7,000.00 |
| | ii) | rental | 2,850.00 | 10,350.00 |
| | | 1) Shell Walk (SW) 3,500.00 ($42,000.00 per annum) ** | | |
| | | 2) Widgeon (WW) 2,500.00 ($30,000.00 per annum) ** | | |
| | | 3) 6th Street 2,850.00 | | |
| | | 4) 1022 1,500.00 ** | | |
| | iii) | consulting | 1,000.00 | |
| | | farm | 2,360.00 | 7,560.00 (3) |
| | iv) | funds from property sales | | 7,750.00 ** |
| | | | ---------------- | |
| | | | 10,058.60 | 37,460.00 |

Within twenty-four months (24) of the Effective Date and after the sale of some of his
real estate, Debtor projects that monthly revenue is $18,410.00 (7,000.00 plus 2,850.00
plus 1,000.00 plus 7,560.00).


| | | | |
|---|---|---|---|
| b) | business expenses | | |
| | i) | mortgages | $15,552.64 (8,438.85) ** |
| | ii) | taxes (arrears) | 588.23 |
| | iii) | taxes (current) | 400.00 |
| | iv) | water | 98.00 |
| | v) | insurance | 450.00 |
| | vi) | utilities | 1,027.00 |
| | vii) | Mr. Scriven will provide managerial oversight, routine maintenance and repairs to the properties at no cost to Debtor. | |
| | | | --------------------------------- |
| | | | 18,115.87 (11,002.08) ** |

Within twenty-four months (24) of the Effective Date and after the sale of some of his
real estate, Debtor projects that monthly expenses are $11,002.08.


| | | | |
|---|---|---|---|
| c) | personal expenses | | |
| | i) | utilities | $425.00 |
| | ii) | telephones | 210.00 |
| | iii) | cable/internet | 240.00 |
| | iv) | food | 300.00 |

|      |                  |        |
|------|------------------|--------|
| v)   | transportation   | 300.00 |
| vi)  | health insurance | 467.00 |
| vii) | auto insurance   | 150.00 |

-------------
2,092.00

** - Debtor intends to sell at least three properties within the next twenty-four (24) months. He anticipates that two of them will generate net proceeds which he has prorated over 24 months [2,916.67 (SW)//4,833.33 (1022)//0.00 (WW)].  In addition, these sales lower mortgage expenses (15,552.64 minus $7,113.79).

|                     | SW         | WW         | 1022       |
|---------------------|------------|------------|------------|
| Current fmv         | 650,000.00 | 700,000.00 | 275,000.00 |
|   minus mortgages   | 360.000.00 | 681,250.00 | 150,000.00 |
|                     | 175,000.00 |            |            |
|   minus closing costs | 45,000.00 | 18,750.00  | 9,000.00   |
| Net                 | 70,000.00  | 0.00       | 116,000.00.|

The sale of these properties would eliminate the following monthly mortgage payments:

|          | SW       | WW       | 1022      |
|----------|----------|----------|-----------|
|          | 2,302.50 | 3,697.91 | 1,113.38. |

(3) - The projected farm monthly income is generated as follows:

|    |                           |          |
|----|---------------------------|----------|
| a) | equestrian leasing        | 2,200.00;|
| b) | equestrian riding         | 360.00;  |
| c) | internship                | 1,500.00;|
| d) | bed and breakfast         | 2,500.00;|
| e) | agriculture (organic mulch)| 1,000.00.|

The monthly excess will be used to satisfy Allowed claims.

Debtor has a $4,000,000.00 term life insurance policy that he intends to use in case of his death to satisfy his allowed claims.