Chapter 11 Plan

## UNITED STATES BANKRUPTCY COURT
### for the Eastern District of Pennsylvania

|  |  |  |
|---|---|---|
|  | : |  |
| In re | : | Case No.  13 - 18271 |
| Keith M. Scriven | : | (Chapter 11) |
| Debtor. | : |  |
|  | : | Hon. Ashely M. Chan |
|  | : |  |

# Sixth Modified Plan of Reorganization Proposed by Keith M. Scriven Debtor-in-Possession

Ronald G. McNeil, Esquire
McNeil Legal Services
1333 Race Street
Philadelphia, PA  19107-1585
(215) 564 - 3999 (t)
(215) 564 - 3537 (fx)
  r.mcneil1@verizon.net
Attorney for Debtor

Dated: November 6, 2015

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| ARTICLE I | Introduction | 1 |
| ARTICLE II | Classification | 7 |
| ARTICLE III | Treatment of Administrative | 8 |
| ARTICLE IV | Treatment of Other Claims | 9 |
| ARTICLE V | Means of Implementation | 17 |
| ARTICLE VI | Allowance and Disallowance of Claims | 18 |
| ARTICLE VII | Executory Contracts | 19 |
| ARTICLE VIII | Conditions Precedent | 20 |
| ATICLE IX | Discharge | 21 |
| ARTICLE X | Confirmation | 21 |
| ARTICLE XI | Transition Period | 22 |
| ARTICLE XII | Miscellaneous | 23 |

Amendments  pg. 4 - 8, 10 - 16 (**  -  denotes changes from Fifth Plan)

# ARTICLE I
## INTRODUCTION

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Keith M. Scriven (the "Debtor") from the cash flow of his business operations and as described in Article V. This Plan provides for seventeen (17) classes of claims. This Plan also provides for the payment of administrative claims. Debtor shall satisfy his secured claims and his unsecured, priority claims. Under the Absolute Priority Rule, unsecured, nonpriority creditors holding allowed claims will receive one hundred percent (100%) distributions, unless agreed otherwise.

All creditors and equity security holders should refer to Articles III and IV of this Plan for information regarding the precise treatment of their claims. A Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been filed. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

A.    Definitions

1.01    **Administrative Claim**: A claim under 11 U.S.C. § 503.

1.02    **Allowed**: The use of the term "Allowed" with reference to a Claim or Interest, e.g., "Allowed Unsecured Claim" shall mean one which: (i) is listed in the bankruptcy schedules or list of equity security holders (including any amendments thereto) filed in this Chapter 11 Case as of the Confirmation Date and not listed therein as disputed, contingent or unliquidated; (ii) is set forth in a Proof of Claim or Interest properly filed in this Chapter 11 Case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statute) as the last day for filing such proof and as to which no objection is timely filed; or (iii) is determined to be Allowed in a Final Order.

1.03    **Assets**: All real and personal property (whether tangible or intangible), now owned or hereafter acquired by Debtor, including without limitation Debtor's inventory, all rights of ownership incident thereto, all executory contracts being assumed pursuant hereto, all equipment, accounts, general intangibles, chattel paper, instruments, documents (as such terms are defined in the Uniform Commercial Code as in effect on the date hereof in Pennsylvania), Cash, security deposits, legal, equitable or beneficial rights in trust, escrow and custodial accounts, Causes of Action, licenses, insurance policies, proceeds of insurance policies and all other cash and non-cash proceeds of any of the foregoing.

1.04   **Bank of America** ("BAC"): Mortgage and Security Agreement dated as of November 11, 2005 from Debtor to BAC, f/k/a, American Home Mortgage, as second mortgagee, for 1007 North 6th Street Philadelphia, PA 19123.

1.05   **Bankruptcy Code**: The United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

1.06   **Bankruptcy Court**: (i) The United States Bankruptcy Court for the Eastern District of Pennsylvania and (ii) the United States District Court for the Eastern District of Pennsylvania to the extent that, in respect of the proceedings, matter or a portion of the case to which the term applies, such district court may have withdrawn reference, shall have determined to exercise original jurisdiction or shall have sole authority to enter a final order or judgment.

1.07   **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure as in effect on the Confirmation Date.

1.08   **Bar Date**: The deadline set by the Bankruptcy Court for filing of proofs of claim or interest in the Chapter 11 Case. For pre-petition Claims and Interests and for pre-petition Claims of governmental units, in accordance with 11 U.S.C. § 502(b)(9), the Bar Date fixed by Order of the Court was **April 30, 2014**.

1.09   **Cash**: Cash and readily marketable securities or instruments including, without limitation, certificates of deposit and readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof.

1.10   **Chapter 11 Case**: Debtor's case, under Chapter 11 of the Bankruptcy Code, commenced on September 21, 2013.

1.11   **CitiMortgage, Inc**. ("Citi"): Mortgage and Security Agreement dated as of January 19, 2007 from Debtor to CitiMortgage, Inc., a/k/a, Citibank, N.A., f/k/a, Amerifund Home Mortgage, LLC, as second mortgagee, for 324 Queen Street, Unit B, Philadelphia, PA 19147 (Debtor co-owns and has a joint-debtor for this property as described in section 1.47 below).

1.12   **City of Philadelphia** ("Philadelphia"): Secured claim for unpaid real estate taxes.

1.13   **Claim**: A claim against Debtor as defined in 11 U.S.C. § 101(5).

1.14   **Claimant**: A person or entity holding a Claim or Interest (including his, her or its successors, assigns, heirs, executors or personal representatives).

1.15   **Class**: A category, designated herein, of holders of Claims or Interest which are substantially similar to the other Claims or Interests in such category.

1.16    **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

1.17    **Confirmation Date**: The date on which the Bankruptcy Court shall enter an order confirming this Plan in accordance with the provisions of the Bankruptcy Code.

1.18    **Confirmation Order**: The order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

1.19    **Debtor or Reorganized Debtor**:  Keith M. Scriven is an individual operating businesses in the Commonwealth of Pennsylvania and in the States of New Jersey and of New York.

1.20    **Deutsche Bank National Trust Co.** ("Deutsche"):  Mortgage and Security Agreement dated as of February 8, 2006 from Debtor to Deutsche, f/k/a, Ocwen Loan Servicing, LLC, f/k/a, American Home Mortgage, as mortgagee, for 25 Widgeon Road    Fire Island Pines, NY.

1.21    **Disbursing Agent**: Debtor, Keith M. Scriven, is the individual responsible for making payments consistent with this Plan.

1.22    **Disclosure Statement**: The Disclosure Statement of Debtor dated the date hereof and filed by the Debtor pursuant to 11 U.S.C. § 1125.

1.23    **Disputed Claim**: Any claim which is scheduled as disputed, contingent or unliquidated, or which is objected to, in whole or in part, before or after the Effective Date.

1.24    **Edgewater**:  Debtor satisfied the claims of the Edgewater Colony (in the County of Bergen, within the State of New Jersey) as part of the July 31, 2014 sale of One Shore Road    Edgewater, NJ.

1.25    **Effective Date**: The date selected by Debtor to implement the terms of this Plan, which date shall be twenty (20) days after the Confirmation Order becomes a Final Order.

1.26    **Election Date**: The date fixed by the Bankruptcy Court as the last day for submitting a vote on the Plan.

1.27    **Estate**: Debtor's bankruptcy estate created pursuant to 11 U.S.C. §  541.

1.28    **Fee Claim**: A claim under 11 U.S.C. § 330 or § 503 for allowance of compensation and reimbursement of expenses in this Chapter 11 Case.

Chapter 11 Plan - Cont.                                                                4

1.29   **Final Order**: An order, judgment or other decree issued by the
Bankruptcy Court and entered on its docket that has not been reversed,
stayed, modified or appealed, and as to which the time to appeal, petition
for a certiorari or file a motion for reconsideration has expired, or any
such notice, petition or motion has been withdrawn, as a result of which
such order shall have become final and non-appealable in accordance with
Bankruptcy Rule 8002.  However, the Confirmation shall be treated as a
Final Order even if an appeal has been filed, provided that no stay is
obtained which would prevent the occurrence of the Effective Date.

1.30   **Fulton Bank, N.A.** ("Fulton"):  Commercial Loan and Security
Agreement dated as amended of November 16, 2009 from Debtor to
Fulton, f/k/a, Penn Business Credit, LLC, as second mortgagee, for 1022
County Road 619, Newton, NJ and, as third mortgagee, for 341-A Shell
Walk   Fire Island Pines, NY.

1.31   **Hanlan Midgette Scriven, L.P.** ("H.M.S."): Debtor has a partnership
interest in this business entity, which and on September 17, 2013 filed a
bankruptcy, assigned Bankruptcy Number 13-18109 BIF and dismissed on
June 23, 2014.

1.32   **Impaired Class**: A class that is impaired within the meaning of  11 U.S.C.
§ 1124.

1.33   **Insider**: Any "insider" as that term is defined in paragraph ( C), (E) or (F)
of 11 U.S.C. § 101(31).

1.34   **Interest**: An interest in the debtor or the right to acquire the same,
including, without limitation, as a holder of a right to acquire any interest.
Interest holders are the parties who hold ownership interest (i.e., equity
interest) in the debtor. If the debtor is a corporation, entities holding
preferred or common stock in the debtor are interest holders.  If the debtor
is a partnership, the interest holders include both general and limited
partners.  If the debtor is an individual as in this case, the debtor is the
interest holder.

1.35   **Internal Revenue Service** ("I.R.S."): Claims for unpaid income taxes.

1.36   **J. Otis Smith** ("Smith"):  Mortgage and Security Agreement, dated as of
January 14, 2009 from Debtor to Smith, as first mortgagee, for 1009 North
6th Street   Philadelphia, PA and as an unsecured, nonpriority creditor.

1.37   **Lease Agreement**: It includes the lease agreements between Debtor and
his current and prospective tenants.

**    1.38   **New York Community Bank** ("N.Y.C.B."): On or about December 9,
2005, Debtor personally guaranteed a commercial loan by his related
partnership, H.M.S.  Such loan is treated as an unsecured, nonpriority
claim in an amount yet to be determined.

1.39  **Ocwen Loan Servicing, LLC** ("Ocwen"):  Mortgage and Security Agreement dated as of September 1, 2005 from Debtor to Ocwen, f/k/a, American Home Mortgage, as mortgagee, for 937 County Road Newton, NJ.

** 1.40  **Obermayer Rebmann Maxwell & Hippel, LLP** ("Obermayer"): Debtor engaged this creditor for legal services.  One May 16, 2012, Obermayer obtained a default judgment against Debtor (P.O.C. # 6).

1.41  **Pennsylvania Department of Revenue** ("PA Rev."): Claims for unpaid individual income taxes.  Some of the proof of claim amount may have included some corporate liability.

1.42  **Petition**: The voluntary petition initiating this Chapter 11 Case.

1.43  **Petition Date**: September 21, 2013 pursuant to 11 U.S.C. § 301.

1.44  **Plan**: This Plan of Reorganization of Keith M. Scriven, an individual, as the same hereafter may be amended or modified, including the Exhibits hereto.  References to Exhibits hereto shall include such Exhibits as they may be amended from time to time in accordance with their terms.

1.45  **Professional Person**: Any attorney, accountant, appraiser, auctioneer or other professional within the meaning of 11 U.S.C. § 327 employed by Order of the Bankruptcy Court.

1.46  **Property**: The subject properties are so described with their associated mortgages and security agreements.

1.47  **Secured Claim**: Any claim against Debtor that is secured by a lien on any interest of Debtor in property.

1.48  **Seterus, Inc.**  ("Seterus"): Mortgage and Security Agreement dated as of January 17, 2012 from Debtor to Seterus, a/k/a, Federal National Mortgage Association, f/k/a, CitiMortgage, Inc., a/k/a, Citibank, N.A., as first mortgagee, for 324 Queen Street, Unit B, Philadelphia, PA 19147 (Debtor co-owns and has a joint-debtor for this property as described in section 1.47 below).

1.49  **Stacy J. Brookstein** ("Brookstein"): Debtor and Brookstein co-own 324 Queen Street, Unit B, Philadelphia, PA 19147 and are co-Debtor for the mortgages of Citi and of Seterus for such property.

1.50  **TD Bank, N.A.** ("TD Bank"): Debtor satisfied the Mortgage and Security Agreement dated as of December 3, 2003 from Debtor to TD Bank, as first mortgagee, for One Shore Road Edgewater, NJ ("TD Bank-1"), which sold on July 31, 2014.  Debtor satisfied the Mortgage and Security Agreement dated as of May 27, 2011 from Debtor to TD Bank, as second mortgagee, for One Shore Road ("TD Bank-2"), which sold on July 31, 2014.  Debtor has no personal liability for 113-15 Arch Street because of its sale.  TD Bank has junior liens as of April 21, 2009 for 341-A Shell Walk   Fire Island Pines, NY and for 25 Widgeon Road   Fire Island Pines, NY ("TD Bank-3").

1.51    **Unimpaired Class**: A class that is not impaired within the meaning of 11 U.S.C. § 1124.

1.52    **Unsecured Claim**: A Claim held by any general unsecured creditor of the Debtor other than Administrative Claims or Priority Claims.

1.53    **U.S. Bank, N.A.** ("U.S. Bank"):  Mortgage and Security Agreement dated as of November 11, 2005 from Debtor to U.S. Bank, f/k/a, American Home Mortgage, f/k/a, Rush Loan Management, f/k/a, Arch Bay Holdings, as mortgagee, for 1007 North 6th Street Philadelphia, PA.

1.54    **Wells Fargo Mortgage Corporation** ("Wells Fargo"):  Mortgage and Security Agreement dated as of April 26, 2002, as mortgagee, for 341-A Shell Walk   Fire Island Pines, NY.

1.55    **Other Terms**: A term that is used in this Plan and not defined in this Plan, but that is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the same meaning in this Plan as it is given in the Bankruptcy Code or Bankruptcy Rules.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the provisions of this Plan unless the context otherwise clearly indicates. The singular of a defined term shall include the plural and the plural shall include the singular.

B.    Rules of Interpretation

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (e) any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; (f) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (g) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) subject to the provisions of any contract, Articles of Incorporation, Bylaws, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules; and (j) the rules of construction set forth in 11 U.S.C. § 102 will apply.

C.      Computation of Time.
        In computing any period of time prescribed or allowed by the Plan, unless
        otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall
        apply.


# ARTICLE II
## CLASSIFICATION, DESCRIPTION
## AND IMPAIRMENT OF CLAIMS AND INTERESTS

Pursuant to Section 1122 of the Code, Debtor designate the following classes of Claims
and Interests.

A.      Priority Claims
        2.01    Class 1.        All allowed claims entitled to priority under § 507 of the
                                Code.  These Class 1 claims are impaired.


B.      Secured Claims          All claims to the extent allowed as a secured claim under
                                11 U.S.C. § 506.  These secured claims are impaired.
        2.02    Class 2.        The claim of BAC
                Class 3.        The claim of Citi
                Class 4.        The claim of Deutsche
                Class 5.        The claim of Edgewater
                Class 6.        The claim of Fulton
                Class 7.        The claim of Smith
**              Class 8.        The claim of of Obermayer;
                Class 9.        The claim of Ocwen
                Class 10.       The claim of PA Rev.
                Class 11.       The claim of Philadelphia
                Class 12.       The claim of Seterus
                Class 13.       The claim of TD Bank
                Class 14.       The claim of U.S. Bank
                Class 15.       The claim of Wells Fargo

C.      Class 16.  Unsecured, nonpriority claims.  All claims to the extent allowed under
        11 U.S.C. § 502 of the Code.  These Class 16 claims are impaired.  These Class
        16 claims include the claims of BAC (P.O.C. # 3); of Capital One; of Jersey
        Central Power, a/k/a, First Energy Electric Company ("Jersey Central")  (P.O.C. #
        13); of J. Otis Smith; of Laddy, Clark ("Laddy") (P.O.C. # 9); of Lawrence M.
**      Kane; of N.Y.C.B. (P.O.C. # 11); of PA Rev. (P.O.C. # 7); of PECo (P.O.C. # 4);
        of Philadelphia Gas Works ("P.G.W.") (P.O.C. # 5); of Public Service Enterprise
        Group ("PSE & G"); of Ronette Streeter; of Brookstein (P.O.C. # 17); of Suffolk
        County Water Authority ("Suffolk") (P.O.C. # 2); of United Water - New Jersey
        ("United Water"); of Verizon; and of William Whalon.

D.      Class 17.  Equity interests of the Debtor.  There are no equity interests of the
        Debtor.  In this case, the debtor is an individual; therefore, Debtor is the interest
        holder.  This interest is impaired.

E.      Claims and Interests Classified.  For purposes of voting and all confirmation
        matters, except as otherwise classified herein, all Claims and Interests are
        classified as set forth in this Article II.

F.      Administrative and Priority Tax Claims.  As provided in 11 U.S.C. § 1123(a)(1),
        Administrative Claims shall not be classified, pursuant to the terms set forth in
        Article III of this Plan.


# ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE
## CLAIMS AND U.S. TRUSTEES FEES

3.01    Unclassified Claims.  Notwithstanding 11 U.S.C. § 1123(a)(1),
        administrative expense claims are unclassified.

3.02    Administrative Expense Claims.  Each holder of an administrative
        expense claim allowed under 11 U.S.C. § 503 will be paid in full on the
        Effective Date, or upon such other terms as may be agreed upon by the
        holder of the claim and Debtor.  The Court must approve all professional
        compensation and expenses.  Each professional person requesting
        compensation in the case pursuant to Section 327, 328, 330, 331, 503(b)

or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than sixty (60) days after the Effective Date.  Failure to file a motion or request for payment timely and properly shall result in the Administrative Claim being forever barred and discharged.  Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan.

(a)     No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.

(b)     Payment of Allowed Administrative Claim.  Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by Debtor and such holder, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by Debtor may be paid in the ordinary course of business.

(c)     Professional Fees Incurred After the Effective Date.  Professional fees incurred by Debtor after the Effective Date must be approved by the Debtor and, thereafter, can be paid without further Order of the Court.  Any dispute, which may arise with regard to professional fees after the Effective Date, shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes. In the event of such dispute, Debtor shall pay that portion of the fees, if any, which is not in dispute, punctually.

3.03    United States Trustee Fees.  All fees required to be paid by 28 U.S.C. § 1930(a)(6) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

# ARTICLE IV
## TREATMENT OF OTHER CLAIMS AND INTERESTS

A.      Priority Claims.  These claims are impaired.

4.01    Priority Tax Claims. Each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtor (i) the amount of such holder's Allowed Claim on the Effective Date; (ii) the amount of such holder's Allowed Claim, plus interest accrued at the applicable statutory rate, in

equal quarterly cash payments in accordance with the provisions of 11 U.S.C. § 1129(a)(9)(C) such other treatment as may be agreed upon in writing by Debtor and such Creditor.

4.02    Priority Claim of PA Rev.  The PA Rev. shall be paid in full in equal quarterly installments commencing on the Effective Date.

4.03    Pursuant to 11 U.S.C. § 1129(a)(9)(C), Debtor shall satisfy such claims on or before September 21, 2018.

B.    Secured Claims.  These claims are impaired.

4.04    Class 2: BAC

(a)    Pursuant to 11 U.S.C. §§ 1123(a)(5)(E), 1123(a)(5)(G), and 1123(a)(5)(H), Debtor shall cure pre-petition and post-petition arrears and shall pay BAC, which will satisfy the present value of this allowed secured claim (P.O.C. # 18), less adequate protection payments, plus a modified interest rate of 4.25%, by monthly installments that come due after the Effective Date through the remaining months of the underlying mortgage and note, unless modified by agreement.

(b)    BAC shall retain its lien against this encumber property of the Reorganized Debtor and the secured status of its claim against such property to same extent as exists on the Effective Date, until its claim underlying this lien is paid in full.  Upon payment in full of its Allowed Secured Claim as provided herein, the lien of BAC shall be extinguished and shall effect a full and final satisfaction of such claim such that neither Debtor nor the Reorganized Debtor shall have any liability on account of such claim.

4.05    Class 3: Citi

**    (a)    Brookstein shall make direct payments to Citi.  Should  Brookstien fail to make such payments, if the property in question is foreclosed upon, or if Citi is granted Relief from the Automatic Stay, Debtor will surrender his interest pursuant 11 U.S.C. §§ 1123(a)(5)(B) and 1123(a)(5)(E), or Debtor will attempt to sell this associated property to satisfy this claim and Brookstein's claims pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1123(a)(5)(E).  Pursuant 11 U.S.C. § 1123(a)(5)(B) and after the Effective Date, Debtor will transfer his ownership rights and liabilities to Brookstein and satisfy her claims (P.O.C. # 17) against Debtor.

Chapter 11 Plan - Cont.                                                                 11

        (b)    Citi shall retain its lien against this encumber property of the Reorganized Debtor and the secured status of its claim against such property to same extent as exists on the Effective Date, until its claim underlying this lien is paid in full.  Upon payment in full of its Allowed Secured Claim as provided herein, the lien of Citi shall be extinguished and shall effect a full and final satisfaction of such claim such that neither Debtor nor the Reorganized Debtor shall have any liability on account of such claim.

**    4.06    Claas 4: Deutsche

        (a)    Pursuant to 11 U.S.C. §§ 1123(a)(5)(E), 1123(a)(5)(G), and 1123(a)(5)(H), Debtor shall cure pre-petition and post-petition arrears and shall pay Deutsche, which will satisfy the present value of this allowed secured claim (P.O.C. # 20), less adequate protection payments, plus an adjustable interest rate (currently 3.148%), and adjusted by agreed upon escrow payments for homeowners' insurance and real estate taxes (Debtor will continue to maintain insurance and pay real estate taxes), by monthly installments that come due after the Effective Date through the remaining months of the underlying mortgage and note, unless modified by agreement.

        (b)    Debtor shall pay homeowners' insurance and real estate taxes.

        (c)    Deutsche shall retain its lien against this encumber property of the Reorganized Debtor and the secured status of its claim against such property to same extent as exists on the Effective Date, until its claim underlying this lien is paid in full.  Upon payment in full of its Allowed Secured Claim as provided herein, the lien of Deutsche shall be extinguished and shall effect a full and final satisfaction of such claim such that neither Debtor nor the Reorganized Debtor shall have any liability on account of such claim.

   4.07    Class 5: Edgewater

        (a)    Pursuant to 11 U.S.C. §§ 1123(a)(5)(E) and 1123(a)(5)(G), Debtor has satisfied Edgewater's claim (P.O.C. # 15) upon the July 31, 2014 sale of One Shore Road.

        (b)    Upon such payment, the lien of Edgewater has been extinguished and has effected a full and final satisfaction of such claim such that neither Debtor nor the Reorganized Debtor shall have any liability on account of such claim.

   4.08    Class 6: Fulton

        (a)    As per the parties agreement, Debtor will make principal and interest payments to Fulton for the modified date until this mortgage's maturity date on July 1, 2017.

        (b)    Debtor shall pay homeowners' insurance and real estate taxes.

Chapter 11 Plan - Cont.                                                                                12

     (c)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E) and 1123(a)(5)(G) and on or before such maturity date, Debtor will attempt to sell 1022 County Road 619, Newton, NJ to satisfy the claim of Fulton.

     (d)     Fulton shall retain its lien against this encumber property of the Reorganized Debtor and the secured status of its claim against such property to same extent as exists on the Effective Date, until its claim underlying this lien is paid in full.  Upon payment in full of its Allowed Secured Claim as provided herein, the lien of Fulton shall be extinguished and shall effect a full and final satisfaction of such claim such that neither Debtor nor the Reorganized Debtor shall have any liability on account of such claim.

4.09     Class 7: Smith

     (a)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E) and 1123(a)(5)(G), Debtor shall satisfy Smith's claim of $100,000.00 upon the sale of 1009 North 6th Street, unless modified by further agreement.

     (b)     Smith shall retain his lien against this encumber property of the Reorganized Debtor and the secured status of its claim against such property to same extent as exists on the Effective Date, until its claim underlying this lien is paid in full.  Upon payment in full of its Allowed Secured Claim as provided herein, the lien of Smith shall be extinguished and shall effect a full and final satisfaction of such claim such that neither Debtor nor the Reorganized Debtor shall have any liability on account of such claim.

**     4.10     Class 8: Obermayer

     (a)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E), 1123(a)(5)(G), and 1123(a)(5)(H), Debtor shall cure pre-petition and post-petition arrears and shall pay Obermayer, which will satisfy the present value of this allowed secured claim (P.O.C. # 6), plus the appropriate interest rate.

     (b)     The parties may modify the terms of this repayment.

     (c)     Obermayer shall retain its lien against this encumber property of the Reorganized Debtor and the secured status of its claim against such property to same extent as exists on the Effective Date, until its claim underlying this lien is paid in full.  Upon payment in full of its Allowed Secured Claim as provided herein, the lien of Deutsche shall be extinguished and shall effect a full and final satisfaction of such claim such that neither Debtor nor the Reorganized Debtor shall have any liability on account of such claim.

4.11     Class 9: Ocwen

     (a)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E), 1123(a)(5)(G), and 1123(a)(5)(H), Debtor shall cure pre-petition and post-petition arrears and shall pay Ocwen, which will satisfy the present value

Chapter 11 Plan - Cont.                                                                    13

of this allowed secured claim (P.O.C. # 19), less adequate protection payments, plus an adjustable interest rate (currently 3.139%), and adjusted by agreed upon escrow payments for homeowners' insurance and real estate taxes, by monthly installments that come due after the Effective Date through the remaining months of the underlying mortgage and note, unless modified by agreement.

**     (b)     Debtor shall pay homeowners' insurance and real estate taxes.

(c)     Ocwen shall retain its lien against this encumber property of the Reorganized Debtor and the secured status of its claim against such property to same extent as exists on the Effective Date, until its claim underlying this lien is paid in full. Upon payment in full of its Allowed Secured Claim as provided herein, the lien of Ocwen shall be extinguished and shall effect a full and final satisfaction of such claim such that neither Debtor nor the Reorganized Debtor shall have any liability on account of such claim.

4.12     Class 10: PA Rev.

(a)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E) and 1123(a)(5)(G), Debtor shall satisfy this allowed secured claim (P.O.C. # 7), shall be reduced to the value of the collateral, and shall be paid quarterly over forty-eight months in accordance with the provisions of 11 U.S.C. § 1129(a)(9)(C) plus interest accrued at the applicable statutory rate of 3.0%, unless modified by agreement.

(b)     PA Rev. shall retain its lien against this encumber property of the Reorganized Debtor and the secured status of its claim against such property to same extent as exists on the Effective Date, until its claim underlying this lien is paid in full. Upon payment in full of its Allowed Secured Claim as provided herein, the lien of PA Rev. shall be extinguished and shall effect a full and final satisfaction of such claim such that neither Debtor nor the Reorganized Debtor shall have any liability on account of such claim.

4.13     Class 11: Philadelphia

(a)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E) and 1123(a)(5)(G), Debtor shall satisfy this allowed secured claim (P.O.C. # 8), shall be reduced to the value of the collateral, and shall be paid quarterly over forty-eight months in accordance with the provisions of 11 U.S.C. § 1129(a)(9)(C) plus interest accrued at the applicable statutory rate of 9.0%, unless modified by agreement.

**     (b)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E) and 1123(a)(5)(G), Debtor shall satisfy Philadelphia's claim upon the sale of 1009 North 6th Street, unless modified by agreement.

Chapter 11 Plan - Cont.                                                                    14

        (c)     Philadelphia shall retain its lien against this encumber property of the Reorganized Debtor and the secured status of its claim against such property to same extent as exists on the Effective Date, until its claim underlying this lien is paid in full.  Upon payment in full of its Allowed Secured Claim as provided herein, the lien of Philadelphia shall be extinguished and shall effect a full and final satisfaction of such claim such that neither Debtor nor the Reorganized Debtor shall have any liability on account of such claim.

**     4.14    Class 12: Seterus

        (a)     Seterus has been granted Relief from the Automatic Stay, Debtor will surrender his interest pursuant 11 U.S.C. §§ 1123(a)(5)(B) and 1123(a)(5)(E).  If Brookstein agrees, Debtor will attempt to sell this associated property to satisfy this claim and Brookstein's claim (P.O.C. # 17) pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1123(a)(5)(E).

        (b)     Pursuant 11 U.S.C. § 1123(a)(5)(B) and after the Effective Date, Debtor will transfer his ownership rights and liabilities to Brookstein and satisfy her unsecured, nonpriority claim against Debtor.

        (c)     Seterus shall retain its lien against this encumber property of the Reorganized Debtor and the secured status of its claim against such property to same extent as exists on the Effective Date, until its claim underlying this lien is paid in full.  Upon payment in full of its Allowed Secured Claim as provided herein, the lien of Seterus shall be extinguished and shall effect a full and final satisfaction of such claim such that neither Debtor nor the Reorganized Debtor shall have any liability on account of such claim.

    4.15    Class 13: TD Bank

        (a)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E) and 1123(a)(5)(G), Debtor has satisfied TD Bank's claim as it relates to One Shore Road upon the July 31, 2014 sale of One Shore Road.

        (b)     Upon such payment, the lien of TD Bank for One Shore Road has been extinguished and has effected a full and final satisfaction of such claim such that neither Debtor nor the Reorganized Debtor shall have any liability on account of such claim.

        (c)     TD Bank's proof of claim (P.O.C. # 16) has been reduced because of the sale of One Shore Road and of a related entity's sale of 113-15 Arch Street.

        (d)     TD Bank has junior liens on 25 Widgeon Road and on 341A Shell Walk, which, and consistent with the March 19, 2015 Stipulation, totals $175,000.00.

Chapter 11 Plan - Cont.                                                                15

(e)     Debtor intends to sell 25 Widgeon Road and 341A Shell Walk and
will satisfy TD Bank junior liens with one or both of these sales.

(f)     TD Bank shall retain its lien against these encumber properties of
the Reorganized Debtor and the secured status of its claim against
such properties to same extent as exists on the Effective Date, until
its claim underlying this lien is paid in full.  Upon payment in full
of its Allowed Secured Claim as provided herein, the lien of TD
Bank shall be extinguished and shall effect a full and final
satisfaction of such claim such that neither Debtor nor the
Reorganized Debtor shall have any liability on account of such
claim.

** 4.16 Class 14: U.S. Bank

(a)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E) and 1123(a)(5)(G), Debtor
shall cure pre-petition and post-petition arrears and shall pay U.S.
Bank, which will satisfy its present value (P.O.C. # 10), which
includes homeowners' insurance and real estate taxes, less
adequate protection payments, plus an adjustable interest rate
(currently 2.875%), and adjusted by agreed upon escrow payments,
as modified by agreement.

(b)     U.S. Bank's total amount has been modified and the maturity date
of this mortgage has been modified to extend thirty (30) years from
its modification date, October 22, 2015.

(c)     Debtor shall pay homeowners' insurance and real estate taxes.

(d)     U.S. Bank shall retain its lien against this encumber property of the
Reorganized Debtor and the secured status of its claim against
such property to same extent as exists on the Effective Date, until
its claim underlying this lien is paid in full.  Upon payment in full
of its Allowed Secured Claim as provided herein, the lien of U.S.
Bank shall be extinguished and shall effect a full and final
satisfaction of such claim such that neither Debtor nor the
Reorganized Debtor shall have any liability on account of such
claim.

** 4.17 Class 15: Wells Fargo

(a)     Pursuant to 11 U.S.C. §§ 1123(a)(5)(E), 1123(a)(5)(G), and
1123(a)(5)(H), Debtor shall cure pre-petition and post-petition
arrears and shall pay Wells Fargo, which will satisfy the present
value of this allowed secured claim (P.O.C. # 12), less adequate
protection payments, plus a modified interest rate of 4.25%, and
adjusted by agreed upon escrow payments for homeowners'
insurance and real estate taxes, by monthly installments that come
due after the Effective Date through the remaining months of the
underlying mortgage and note, unless modified by agreement.

> (b)    Debtor shall pay homeowners' insurance and real estate taxes.
>
> (c)    Wells Fargo shall retain its lien against this encumber property of the Reorganized Debtor and the secured status of its claim against such property to same extent as exists on the Effective Date, until its claim underlying this lien is paid in full.  Upon payment in full of its Allowed Secured Claim as provided herein, the lien of Wells Fargo shall be extinguished and shall effect a full and final satisfaction of such claim such that neither Debtor nor the Reorganized Debtor shall have any liability on account of such claim.

C.    Class 16 - Unsecured, nonpriority claims.  These claims are impaired.

** 4.18    As listed in Article II, C, unsecured, nonpriority claims include the Class 16 claims of BAC; Capital One; Jersey Central; J. Otis Smith; Laddy; Lawrence M. Kane; N.Y.C.B.; PA Rev.; PECo; P.G.W.; PSE & G; Ronette Streeter; Brookstein; Suffolk; United Water; Verizon; and William Whalon.

4.19    Pursuant to 11 U.S.C. § 1129(a)(15)(B), the treatment and consideration to be received by holders of Allowed unsecured, nonpriority claims shall be in full settlement, satisfaction, release and discharge of their respective Claim.  Holders of such claims shall be paid from Debtor's cash flow over and within sixty (60) months after the Effective Date, one hundred percent (100%) of their timely filed and allowed claims under 11 U.S.C. § 502, which has not been deemed disputed, pursuant to the terms set forth in Article VI of this Plan, unless otherwise agreed between Debtor and such creditor.

** 4.20    Except that after the Effective Date and pursuant to 11 U.S.C. § 1123(a)(5)(B) and to section IV.B.4.05 and 4.14 above, Debtor will transfer his ownership rights and mortgage liabilities to Brookstein and satisfy her claims.

** 4.21    The amount of the claim of N.Y.C.B. (Proof of Claim #11) is yet to be determined and Debtor reserves the right to dispute this claim.

4.22    Under the Absolute Priority Rule, Debtor shall not retain any interest in any pre-petition non-exempt property, if such retention does not meet the new value exception or that the requirements of 11 U.S.C. § 1129(a)(15)(B) are triggered.

4.23    Upon payment of allowed claims, this Section of the Plan shall effect a full and final satisfaction of such Claims such that neither Debtor nor the Reorganized Debtor shall have any liability on account of such Claims.

D.    Equity interests of the Debtor.  In this case, Debtor is an individual; therefore, Debtor is the interest holder (i.e., no entity has an equity interest in Debtor).  Debtor will retain his interest and his interest is impaired.

# ARTICLE V
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.01    Plan Funding.  The Cash held by Debtor on the Effective Date shall be used to fund first, the Initial Distributions. The employment, business operations of Debtor, and property sales shall fund the remaining distributions under the Plan.

5.02    Delivery of Documents.  On the Effective Date, if not sooner, Debtor shall deliver to the appropriate parties duly executed originals of all documents contemplated hereby and necessary to effectuate the purposes hereof, if any.

5.03    Management and Operation of Debtor.  Debtor shall continue to own and operate property after the Confirmation Date.

5.04    Continuation of Business.  Consistent with the Absolute Priority Rule, Debtor will retain all of his Assets, except for property which is to be sold or otherwise disposed of as provided for herein.

5.05    Plan Distributions.

     (a)    The Reorganized Debtor shall make all disbursements required under the Plan.

     (b)    Distributions.  Debtor shall make all Distributions required by this Plan. Debtor shall make Distributions to each Creditor at the address specified in such Creditor's proof of claim or at such other address as shall be specified by such Creditor in writing to Debtor on or before the Effective Date. The Distributions otherwise due to each holder of an Allowed Claim as a distribution pursuant to the foregoing shall not be distributed if the aggregate amount of cash to be distributed shall be less than $1.00.

     (c)    Undeliverable Distributions; Uncashed Checks. If any Distribution is returned as undeliverable, or if any check delivered pursuant to a Distribution remains uncashed for ninety (90) days, the amount of such Distribution shall be returned by Debtor to the Operating Reserve Account and, in the case of an uncashed check, such check shall automatically become null and void.  Thereafter, until the second anniversary of the Effective Date, the Creditor entitled to such Distribution may make a claim therefore to the Reorganized Debtor and shall thereupon be entitled to the amount of such Distribution.  After the second anniversary of the Effective Date, the entitlement of such Creditor to such Distribution shall be discharged and the Reorganized Debtor shall retain the amount hereof.

# ARTICLE VI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

6.01    Objections to Claims.  Prior to confirmation, any party-in-interest shall have the right to object to the allowance of any claim.  Subsequent to the Effective Date, the exclusive right to object to the allowance of any claim is hereby reserved to Debtor.  Except as otherwise provided hereof, objections to Claims shall be filed by Debtor with the Bankruptcy Court no later than sixty (60) days after the Effective Date, or such later date as the Court may direct, and served upon the holder of such claim.  Unless otherwise ordered by the Court, objections to claims may be litigated to judgment, settlement or withdrawal.

6.02    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and Debtor has scheduled such claim as disputed, contingent, or unliquidated.

6.03    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

6.04    Settlement of Disputed Claims.  Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Bankruptcy Rule 9019.

6.05    Payments After Allowance:  Payments to each holder of a disputed claim, to the extent such claim ultimately becomes an allowed claim, shall be made in accordance with the provisions of the Plan governing the class of claims to which the allowed claim belongs.  No interest (except that provided for in the Plan for the treatment of the claims) shall be paid on account of a disputed claim which later becomes an allowed claim.

6.06    Administrative Claims Bar Date: Any and all applications for the request for the final allowance of administrative claims incurred by professionals employed by Debtor pursuant to 11 U.S.C. §§ 327 and 1103 shall be filed with the Court and served upon Debtor's counsel on or before the date which is sixty (60) days after the Effective Date.  Failure to file and serve timely such applications or requests shall result in the disallowance of such administrative claims and such administrative claims shall be barred forever.

6.07    Payment of Administrative Claims that have accrued but have not been filed, for which allowance is pending and disputed administrative claims: Funds shall be segregated and reserved on the Effective Date for the payment of the portion of the administrative claims for which allowance by the Court is pending, which have accrued but have not been filed as of the Effective Date or which are disputed claims.  If an administrative claim for which allowance is pending or which, as of the Effective Date, has accrued but has not yet been filed, becomes an allowed administrative claim, such claim shall be paid within fourteen (14) days after, and to the extent that, such pending administrative claim becomes an

Chapter 11 Plan - Cont.                                                                 19

allowed administrative claim.  If a portion of an administrative claim is a disputed claim, the disputed portion of such administrative claim shall be paid in full in the same manner as provided in this Article III with respect to allowed administrative claims within fourteen (14) days after, and to the extent that, such disputed claim becomes an allowed administrative claim.

6.08    Causes of Action.  Notwithstanding the occurrence of Confirmation Date or the Effective Date, Debtor may pursue actions to recover preferences, fraudulent conveyances or other Causes of Action.  Debtor shall be the only party authorized to pursue actions to recover preferences, fraudulent conveyances or other Causes of Action.  The consideration paid or to be paid to each Creditor under the Plan shall be deemed in full satisfaction of any and all conflicting claims among Creditors to the estate.  Pursuant to 11 U.S.C. § 1123(b)(3)(B), Debtor shall retain each and all Causes of Action which Debtor had or had power to assert immediately prior to confirmation of the Plan, including without limitation actions for the avoidance and recovery pursuant to 11 U.S.C. § 550 of transfers avoidable by reason of section 544, 545, 547, 548, 549, or 553(b) of the Code, and may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of such causes of action.  All Causes of Action shall remain the property of Debtor unless expressly assigned hereunder.  Nothing contained in the Plan shall constitute a waiver of the rights, if any, of Debtor to a jury trial with respect to any Cause of Action or objection to any Claim.

## ARTICLE VII
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Assumed Executory Contracts and Unexpired Leases.

(a)    Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan as provided in Article X (Debtor has begun to rent and is seeking additional tenants):

| Name of Other Parties to Lease/Contract | Description of Contract or Lease |
| --- | --- |
| Marki Odom | 1 year lease   (1007 North 6th Street) |
| James & Alicia DiCataldo | 1 year lease   (1022 Route 619) |
| Sayuri Decky | 1 year lease   (1007 North 6th Street) |
| Lawrence Kane | 1 year lease   (1007 North 6th Street) |
| seasonal leases | Fire Island Pines, NY |

(b)     Pursuant to 11 U.S.C. § 365, Debtor has the right to reject executory
contracts or leases in Debtor's reasonable business judgment.

(c)     Except as specifically provided herein, all executory contracts and
unexpired leases have been rejected pursuant to 11 U.S.C. §§ 365 and
1123(b)(2).  Debtor will be conclusively deemed to have rejected all
executory contracts and/or unexpired leases not expressly assumed under
section 7(a) above, or before the date of the order confirming this Plan,
upon the Effective Date of this Plan.

(d)     Any rejection claim for damages arising by reason or the rejection of any
executory contract or unexpired lease will constitute an unsecured,
nonpriority claim.  A proof of a claim arising from the rejection of an
executory contract or unexpired lease under this section shall be filed with
the Court any time prior to the later of thirty (30) days after the Effective
Date or thirty (30) days following the filing of such proofs of claim for
damages.  Said objections shall be served upon the holder of the claim to
which such objection is made.  Failure to file such a Proof of Claim in a
timely fashion shall result in its disallowance.  Nothing herein shall
constitute a determination that any such rejection will give rise to or result
in an Allowed Claim.

**ARTICLE VIII**
**CONDITIONS PRECEDENT**

8.01    Condition Precedent.  The occurrence of the Effective Date and the
consummation of the Plan set forth herein is subject to the condition that the
Confirmation Order shall have become a Final Order.

8.02    Waiver of Condition Precedent.  Debtor may, but shall have no obligation to,
waive the foregoing conditions precedent.

8.03    Failure of Condition Precedent.  If the consummation of the Plan does not occur,
whether by failure to satisfy the condition precedent contained in Section 8.01
hereof, or because of the withdrawal of the Plan or otherwise, the Plan and the
Confirmation Order shall be deemed null and void, and in such event, any
consents or releases given in anticipation of the implementation of the Plan shall
be void ab initio and nothing contained herein shall effect the rights or remedies
of Debtor or any Creditor.

# ARTICLE IX
## DISCHARGE

Debtor shall not receive a discharge of debts until Debtor makes all Allowed Class 3 payments due this Plan or this Court grants a hardship discharge, to the extent specified in 11 U.S.C. § 1141.

If Confirmation of this Plan does not occur, the Plan shall be deemed null and void.  In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims against Debtor or its estate or any other persons, or to prejudice in any manner the rights of Debtor or its estate or any person in any further proceeding involving Debtor or its estate.

The provisions of this Plan shall be binding upon Debtor, all Creditors, and all Equity Interest Holders, regardless of whether such Claims or Equity Interest Holders, are impaired or whether such parties accept this Plan, upon Confirmation thereof.

Pursuant to 11 U.S.C. § 1141(d)(5)(A) of the Code, Debtor may file a motion to close this bankruptcy case sometime after confirmation and move to reopen upon completion of all payments required under the Plan for the purpose of receiving his discharge.

# ARTICLE X
## CONFIRMATION

10.01   Impaired Classes to Vote: Each claimant who is a member of an impaired class under the Plan is entitled to vote, if either (i) its claim has been scheduled by Debtor, or (ii) it has filed a proof of claim on or before the Bar Date.

10.02   Acceptance or Rejection of Plan
Each impaired class of Creditors with claims against the Debtor's estate shall be entitled to vote separately to accept or reject the Plan.  A class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the allowed Claims of such class that have accepted or rejected the Plan.  In the event that any impaired class of Creditors or Interest holders shall fail to accept the Plan in accordance with 11 U.S.C. § 1129(a), the Proponent reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with 11 U.S.C. § 1129(b).

10.03   Before Confirmation:  At any time prior to confirmation, Debtor may modify the Plan but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of 11 U.S.C. §§ 1122 and 1123.  If Debtor files a modification with the Court, the Plan, as modified, shall become the Plan.

10.04    After Confirmation:  At any time after Confirmation and before substantial
consummation of the Plan, Debtor may modify the Plan but may not modify the
Plan so that the Plan, as modified, fails to meet the requirements of 11 U.S.C. §§
1122 and 1123.  The Plan as modified becomes the Plan only if the
Court, after notice and hearing, confirms such Plan as modified under 11 U.S.C. §
1129.

10.05    A creditor or party in interest may bring a motion to convert or dismiss the case
under 11 U.S.C. § 1112(b), after the Plan is confirmed, if there is a default in
performing under the Plan.  If the Court orders the case converted to Chapter 7
after the Plan is confirmed, then all property that had been property of the Chapter
11 estate, and that has not been disbursed pursuant to the Plan, will revest in the
Chapter 7 estate, and the automatic stay will be reimposed upon the revested
property only to the extent that relief from stay was not previously granted by the
Court during this case.

10.06    Retained Assets.  Pursuant to 11 U.S.C. § 1141(c), upon the Effective Date, the
Assets will, except as otherwise specifically provided herein, be free and clear of
all Claims and Interests of Creditors and Interest Holders and/or their successors
and assigns, and all such entities shall be enjoined, pursuant to the terms of the
Confirmation Order, from asserting any claim, right, demand or liability against
Debtor on account of any Claim by the Confirmation Order.

10.07    Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the
office of the United States Trustee post-confirmation until such time as the case is
converted, dismissed, or closed pursuant to a final decree.

# ARTICLE XI
# TRANSITION PERIOD

11.01    Application of Article.  The provisions of this Article shall apply during the
Transition Period.

11.02    Generally.  During the Transition Period, Debtor shall operate and manage their
estate subject to the same requirements applicable to that entity prior to the
Confirmation Date.

11.03    The Stay.  The Automatic Stay of 11 U.S.C. § 362(c)(2)(C) shall continue in
effect until the earliest of the closure of this case, the dismissal of this case, or a
discharge is granted.

11.04    Post-Petition Payments.  Any payments made by Debtor to a Secured Creditor
prior to the Effective Date shall be applied first against post-petition interest
allowed on such Claim under 11 U.S.C. § 506, if any, and then against the
principal amount of such Secured Claim.

11.05  Transition Period Payments.  Notwithstanding any other provision of this Plan, during the Transition Period, unless stayed by order of a court of competent jurisdiction, Debtor may make payments to the holders of any Class of Claims as contemplated by Article IV hereof.

11.06  During the Transition Period and subject to Article XI hereof, Debtor may, without obtaining approval of the Bankruptcy Court, waive any condition precedent to the Effective Date and, so long as they do not materially and adversely affect the interests of Creditors of Debtor, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of the Plan.  Subject to approval of the Bankruptcy Court after notice and a hearing, Debtor may amend or modify the Plan in any respect.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.01  Retention of Jurisdiction by the Court After Effective Date:  Pursuant to 11 U.S.C. §§ 105(a) and 1142, the Court shall retain and shall have exclusive jurisdiction over any matter arising under the Code or arising in or related to this Chapter 11 Case and this Plan.

12.02  Payments Under the Plan:  Whenever any payment required to be made under the Plan shall be due on a day other than a business day, such payment shall be made, instead, without interest, on the immediately succeeding business day, but shall be deemed to have been made on the date due.  Any payment shall be allocated to the principal amount of the claim (as determined for federal income tax purposes) first and then, to the extent the payment exceeds the principal amount of the claim, to the portion of the claim representing the accrued but unpaid interest.  Any payment to be made pursuant to the Plan shall be deemed to have been timely made if made within fourteen (14) business days following the applicable payment date, as set forth in the Plan.  Notwithstanding anything to the contrary contained herein, no payment of fractions of cents shall be made.  Fractional cents shall be rounded down to the nearest whole cent.

12.03  Cure of Defaults Under the Plan.  Debtor shall have sixty (60) days after receipt of written notice (such notice shall conspicuously state that it is a notice of default and shall describe with particularity the nature of the default) of any default under the Plan in which to cure such default, except as modified by agreements after the Petition Date.

Chapter 11 Plan - Cont.                                                                24

12.04  Exculpation.  Debtor and the Disbursing Agent and their respective attorneys,
       financial advisors and agents shall not have, nor shall they incur, any liability to
       any Creditor or to any other Person for any act or omission in connection with or
       arising out of the Chapter 11 Case, or out of their administration of this Plan,
       except for their own willful misconduct, recklessness, gross negligence, or bad
       faith.  Additionally, in all respects, Debtor, the Disbursing Agent and their
       respective attorneys, financial advisors and agents shall be entitled to rely upon
       the advice of counsel with respect to their duties and responsibilities under the Plan.

12.05  Terms Binding.  On the Effective Date, all provisions of this Plan, including all
       exhibits attached hereto, shall be binding upon Debtor, all Claim and Interest
       holders, and all other entities who are affected in any manner by the Plan.  All
       Exhibits attached to the Plan shall have full force and effect. and shall bind all
       parties thereto as of the Effective Date, whether or not such exhibits shall actually
       be executed, issued, delivered or recorded on the Effective Date or thereafter.

12.06  Plan Implementation. The Plan shall be consummated on the Effective Date. The
       Confirmation Order shall empower and authorize Debtor to take or cause to be
       taken, prior to the Effective Date, all actions that are necessary to implement the
       Plan.

Respectfully submitted,

By: _____
Keith M. Scriven, Debtor

By: _____
Ronald G. McNeil, Esquire
Attorney for Debtor
DATE: November 6, 2015
1333 Race Street
Philadelphia, PA  19107-1585
(215) 564 - 3999 (t)
(215) 564 - 3537 (fx)
   r.mcneil1@verizon.net